EL PUEBLO DE PUERTO RICO, apelado, *v.* ISMAEL SILVA VIÑAS, acusado y apelante.

*Número:* CR-88-38          *Resuelto:* 30 de junio de 1992

*José M. Sagardía Pérez*, abogado del apelante; *Norma Cotti Cruz, Procuradora General Interina, Rose Mary Corchado Lorent, Procuradora General Auxiliar*, abogadas de el Pueblo.

---

## SENTENCIA

## I

El Ministerio Público acusó a Ismael Silva Viñas de homicidio, tentativa de homicidio (dos (2) cargos), e infracción al *Art. 8 de la Ley de Armas de Puerto Rico*, 25 L.P.R.A. sec. 418. Excepto la infracción al referido Art. 8, el Jurado lo absolvió de los restantes. El tribunal (Hon. Ygrí Rivera de Martínez, Juez) lo sentenció a cumplir de tres (3) a siete (7) años de reclusión.

Inconforme, en apelación, como único señalamiento discute que el tribunal sentenciador omitió "instruir al jurado sobre portación incidental de un arma como eximente de responsabilidad". Memorando, pág. 1.

Los párrafos siguientes sintetizan adecuadamente su contención y razonamiento:

> De entrada, hay que señalar como hecho que no está en controversia el que el apelante portó en sus manos un revólver. Tampoco hay controversia sobre el hecho de que esa arma la botó el apelante inmediatamente después de los hechos en un lugar que le fue comunicado a la policía esa misma noche en el Centro Médico. *La controversia gira en torno a si ese revólver era uno del apelante o era el arma de Tulio Figueroa, padre, que llegó a manos del apelante en la discusión y forcejeo que se ha descrito anteriormente.*
> Esa controversia que acabamos de mencionar *es una cuestión de hechos que le correspondía dirimir al jurado.* Pero, por supuesto, su función de adjudicar este asunto tenía que llevarla a cabo dentro del marco legal correcto y habiendo recibido las instrucciones procedentes en derecho. Si las instrucciones que se le ofrecen no son completas, aunque las que se le hayan ofrecido sean correctas, la OMISION vicia todo el proceso de adjudicar la controversia. (Énfasis suplido.) Memorando, págs. 5-6.

Adjudicar el planteamiento requiere una referencia mínima a la prueba desfilada al respecto. Veamos.

*Ángel Silva Viñas*, de sesenta y tres (63) años, hermano

del apelante Silva Viñas, declaró que el 7 de junio de 1970, alrededor de las 11:00 P.M., se detuvieron a darse unas cervezas en el *Bar Restaurant Figueroa* en la Avenida La Palma en Santurce. Permanecieron aproximadamente media hora.

Fuera del negocio hubo una discusión entre el dueño del establecimiento, Tulio Figueroa, y su hermano, Ismael, por un vaso de cristal que éste insistía en llevarse. Oyó unas detonaciones, salió y vio a Figueroa en el piso y a su guardaespalda, Pablo Castro Ramos, disparándole a Ismael desde la parte trasera de un auto; éste, a su vez, le disparaba al guardaespalda desde el otro extremo. No sabe el tipo de armas usado. Se marchó del lugar.

*Noemí Arroyo Diez*, joven de quince (15) años, trabajaba en el Bar. Declaró que hubo una discusión por un vaso entre el dueño del negocio e Ismael. Mientras se encontraba fuera dentro de un auto —ya estaban cerrando el negocio— oyó unos disparos, se tiró al piso y *no* vio lo ocurrido. Luego de oir varios disparos, bajó del auto y vio a Tulio y a Pablo heridos.

Cuando se montaron todos en el vehículo, ella preguntó qué había ocurrido y Tulio, hijo le explicó que debido a la discusión por el vaso, el apelante Silva Viñas le había disparado a su padre, a Pablo y a él. Fueron al Dispensario de la Parada 19 y luego al Centro Médico. Allí se enteró que Tulio Figueroa había muerto. A la fecha de los hechos era novia de Tulio, hijo. Estuvieron juntos esa noche, en la funeraria y durante el entierro. Prestó declaración jurada y afirmó lo que Tulio, hijo le indicó que dijera. Confrontada con la declaración, manifestó que esa noche no había visto nada; la verdad únicamente era que Tulio Figueroa estaba herido.

*Vilma Soto Torres* era la cajera del negocio. Atestó que alrededor de las 11:00 P.M. Tulio la mandó a cuadrar la caja. Mandó a las muchachas a que se fueran al auto para llevarlas a sus casas. Cuadró y se dirigió al auto que estaba

en la otra esquina. El apelante Silva Viñas y el dueño permanecieron tranquilos en el negocio. Al regresar, la señora Soto Torres oyó la discusión. Tulio Figueroa le arrebató el vaso a Ismael y la testigo corrió. Oyó unas detonaciones; vio a los heridos y luego se marchó a su casa.

Añadió que Tulio Figueroa había bebido mucho y le dijo a Ismael que si se llevaba el vaso "ese sería su error". Se llevó la mano a la cintura donde siempre tenía un arma. En esos momentos Tulio, hijo y Pablo Castro se encontraban dentro del negocio. No vio a nadie con armas, sólo oyó las detonaciones.

*Pablo Castro Ramos*, luchador profesional, trabajaba en el Bar para mantener el orden. Declaró que el apelante Silva Viñas iba casi diariamente al negocio. Ese día tenía un trago en la mano. Tulio Figueroa le pidió que lo dejara y aquél le contestó que aún no había terminado, por lo que se lo iba a llevar. Tulio Figueroa le dijo que "si lo haces te sale caro". No prestó mucha atención, pues pensó que estaba bromeando, ya que las relaciones entre ambos eran buenas.

Mientras Figueroa e Ismael estaban fuera del negocio, Castro Ramos oyó unas detonaciones. Tomó el arma que estaba en el negocio y salió a pelear. Vio a Tulio Figueroa y a su hijo heridos en el piso. El apelante Silva Viñas le disparó cuando salió y él contestó. Dieron vueltas alrededor de un auto y se dispararon nuevamente. El apelante Silva Viñas lo hirió en el hombro izquierdo y logró huir. Trató, pero no pudo alcanzarlo. Regresó y llevó a los heridos al dispensario.

En el contrainterrogatorio aclaró que él disparó primero. Cuando el Fiscal le preguntó nuevamente señaló que al salir del negocio disparó y que ambos disparos se produjeron a la vez.

Al recoger a Tulio Figueroa, éste no estaba armado. Tampoco su hijo Tulio, quien sólo tenía unos candados en las manos. Señaló que Tulio Figueroa estaba siempre ar-

mado y *que no pudo observar diferencia entre el arma —que no pudo describir— que tenía el apelante Ismael y la de Tulio Figueroa*. No vio a nadie más con armas de fuego fuera del negocio.

Manifestó que al recoger a Tulio Figueroa para llevarlo al hospital no lo registró para saber si tenía o no su arma. No vio el arma en ningún momento. Dentro del negocio no vio que Ismael tuviera un arma, únicamente lo vio con el arma cuando salió del negocio.

Declaró que Tulio Figueroa tenía dos (2) armas: una en el mostrador del negocio y otra que siempre portaba. Él usó la que estaba en el mostrador. En cuanto al arma que vio usó el apelante Ismael, Castro Ramos dijo que *podía ser igual a la que Tulio Figueroa portaba, pero no podía asegurarlo: era un revólver, no una pistola.*

Castro Ramos atestó que al perseguir a Ismael, éste botó el arma. Lo informó a la policía y no sabe si la buscaron. No se detuvo a recogerla, pues quería poner atención a los heridos. Describió el arma que portó el apelante Silva Viñas como un revólver negro, cañón largo; no puede precisar el calibre. Añadió que el arma que él utilizó era de cañón corto.

El *Dr. Rafael Criado* practicó la autopsia al cadáver de Tulio Figueroa. Atestó que la causa de la muerte fue una herida de bala. Entregó un proyectil calibre 38 que encontró en el cuerpo para hacer el examen balístico. El por ciento de alcohol en la sangre fue de veinticuatro por ciento (24%) y añadió que se trataba de un alcohólico crónico, con cirrosis del hígado y hepatitis alcohólica.

*Tulio, hijo* atestó que tenía diecinueve (19) años para la fecha de los hechos. Los hechos ocurrieron alrededor de las 11:30 P.M., cuando se disponían a cerrar el negocio. Las muchachas habían salido hacia el carro de su padre, quien las transportaba a sus casas. Estaba fuera del negocio con él y éste discutía con el apelante Ismael sobre un vaso de cristal que insistía en llevarse.

Vio al apelante Silva Viñas extraer un arma, recibió un balazo y se desplomó al piso. Cuando estuvieron dentro del negocio, observó que el apelante Ismael tenía un bulto en el bolsillo y vio "como la culata de un revólver". No se lo informó a su padre. Cuando volvió a verlo, forcejeando con su padre, tenía un arma en las manos. No vio que su padre tuviera un arma en la mano. Hubo dos (2) disparos, transcurrieron unos segundos y su padre se desplomó. Luego oyó más disparos.

Luego los recogieron para llevarlos al hospital. Fue llevado al dispensario y su padre al Centro Médico. Durante el trayecto al dispensario le contó a su novia Noemí lo ocurrido. Reiteró que mientras su padre forcejeaba no tenía arma alguna en la mano. El apelante Silva Viñas tenía una obscura y pequeña. Aunque su padre había bebido estaba tranquilo, jocoso. Al oir la discusión y ver que el apelante Silva Viñas sacó el arma, fue a defender a su padre. Agredió al apelante Silva Viñas con los candados que tenía en la mano. Silva Viñas le disparó y luego le disparó a su padre, Tulio Figueroa. Ambos cayeron a una distancia de dos (2) a tres (3) pies.

## II

Coincidimos con el apelante Silva Viñas que la prueba expuesta justificaba que se impartieran al Jurado instrucciones sobre portación incidental de un arma de fuego, tal y como fueron solicitadas. *Pueblo v. Rivera Márquez*, 96 D.P.R. 758 (1968).

Ciertamente, en el caso de autos, la prueba de cargo demostró que Silva Viñas portó y poseyó el arma que utilizó para privar de su vida a otro ser humano y dispararle a dos (2) personas más. Así lo admite. Sin embargo, la prueba no fue del todo clara en cuanto al momento en que Silva Viñas advino en posesión del arma y si usó la de la víctima u otra arma.

Los hechos fueron fluidos y acaecieron rápidamente, tal y como ocurrió en *Pueblo v. Mojica Márquez*, 108 D.P.R. 102, 104 (1978), cuando detectamos "una posesión incidental al ejercicio de una legítima defensa propia". Debió el tribunal sentenciador impartir la instrucción al efecto para que el Jurado aquilatara y determinara ese extremo.

Finalmente, pesa en nuestro ánimo judicial que ese mismo Jurado lo absolvió del homicidio y los otros dos (2) cargos de tentativa de homicidio.

El error, por su naturaleza, tuvo un impacto perjudicial sustantivo y amerita *que dictemos sentencia revocatoria*.

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió opinión concurrente y disidente. El Juez Asociado Señor Fuster Berlingeri no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

El Tribunal, mediante la sentencia mayoritaria que emite, *correctamente* resuelve que el tribunal de instancia *erró* al negarse a transmitirle a los señores del Jurado una instrucción respecto a la " 'portación incidental de un arma como eximente de responsabilidad' " (Sentencia, pág. 335); ello, llana y sencillamente, por razón de que la prueba presentada justificaba —no importa lo débil que pudiera ser la misma— que se impartieran tales instrucciones a los señores del Jurado. *Pueblo v. Bonilla Ortiz*, 123 D.P.R. 434 (1989). Estamos conforme con dicha determinación.

Ahora bien, el Tribunal *absuelve* al apelante Silva Viñas. Ahí lo erróneo de la decisión hoy emitida. El no

transmitir una instrucción, que en derecho procedía, a los señores del Jurado es un "error de derecho" que, aun cuando justifica la revocación de la sentencia, *no impide la celebración de un nuevo juicio.* Véanse: *Pueblo v. Martínez Torres,* 126 D.P.R. 561 (1990); *Pueblo v. González Colón,* 110 D.P.R. 812 (1981); *Pueblo v. Reyes Acevedo,* 100 D.P.R. 703 (1972); *Pueblo v. Tufiño Cruz,* 96 D.P.R. 225 (1968); *Pueblo v. Rivera Márquez,* 96 D.P.R. 758 (1968); *Pueblo v. Pérez Martínez,* 84 D.P.R. 181 (1961).

En consecuencia, lo procedente en derecho en el presente caso lo es no sólo la revocación de la sentencia apelada, sino la devolución del caso al tribunal de instancia para la celebración de un nuevo juicio. Es por ello que, a pesar de que concurrimos con la revocación decretada, disentimos de la acción del Tribunal de absolver, en esta etapa apelativa, al apelante Silva Viñas.